W. H. Denny, Administrator, v. R. C. Stokes.

Decided February 10, 1903.

1.—Contract—Mental Incapacity—Burden of Proof.

The law presumes all persons to be of sound mind and capable of contracting, and where a contract is assailed on the ground of mental incapacity of one of the parties, the burden is upon the opposite party to show such incapacity.

2.—Same—Opinion of Sanity—Nonexpert Witness.

A nonexpert witness is only permitted to give his opinion as to the sanity or insaniay of a person, whose mental condition at a particular time is in issue, when such witness states the facts upon which his opinion is based, and the weight of such opinion is always for the jury.

3.—Same—Verdict Sustained—Fact Case.

A verdict finding that a person was of sound mind at the time he made a contract will not be set aside unless incapacity is the only reasonable conclusion to be drawn from the facts, or the verdict is against the great weight and preponderance of the evidence. See evidence held to sustain a finding that a person was not so mentally incapacitated as to render his contract void.

4.—Judgment—Wrong Reason Therefor.

It is immaterial that the trial court gives an unsound reason for its judgment, where the judgment can be sustained upon the facts found by the court.

Appeal from the District Court of Houston. Tried below before Hon. John Young Gooch.

*Aldrich & Crook,* for appellant.

*Moore & Newman,* for appellee.

PLEASANTS, Associate Justice.—Appellant, as administrator of the estate of H. L. Henderson, deceased, brought this suit against appellee to recover damages for the wrongful conversion of a stock of jewelry, jeweler's and watchmaker's tools and shop furniture and fixtures, of the alleged value of $2900. The petition alleges that the property above described was owned by the said H. L. Henderson, and that the defendant, on or about the 15th day of March, and while the said Henderson was sick and was mentally and physically unable to transact any business, wrongfully took possession of said property, and converted the same to his own use and benefit, to plaintiff's damage in the sum of $3000, for which amount judgment is prayed.

The defendant answered by general denial, and specially pleaded that H. L. Henderson was indebted to him in the sum of $1500, evidenced by his promissory notes which were secured by a lien upon the property of the said Henderson above described, and was further indebted to him for rent of the building in which said jewelry business was conducted, which rent was secured by a landlord's lien upon said property; "that during the last sickness of the said H. L. Henderson, about the middle of January, 1901, D. W. Henderson, a brother of H. L. Henderson, claiming to

have authority, and who was acting as the agent of the said H. L. Henderson, and at the instance and request of the said H. L. Henderson, and in cancellation of the indebtedness due the defendant by the said H. L. Henderson, delivered to defendant a sufficient amount of the stock of jewelry, etc., on which the said lien existed, to satisfy the debt; that it was agreed by and between the said D. W. Henderson and defendant that the said notes, liens, etc., should be by them deposited with the First National Bank, and there left subject to the order of the said H. L. Henderson, and when he ratified and confirmed the said sale so made by the said D. W. Henderson, that said notes, receipts, liens, etc., should be then and there delivered to the said H. L. Henderson; that said notes, liens, etc., were so placed with said bank, and thereafter the said H. L. Henderson placed with the said bank a bill of sale to all the property claimed by defendant, and took up his said notes, receipts, etc., and that this constituted a full and complete settlement by and between the said H. L. Henderson and appellee." The cause was tried in the court below without the intervention of a jury, and judgment rendered in favor of the defendant.

The evidence shows that H. L. Henderson died March 20, 1901, at Loma, Walker County, Texas, and that the appellant is the duly appointed and qualified administrator of his estate. For some time prior to his death H. L. Henderson had been conducting a jewelry business at Crockett, Houston County. He was taken sick some time in the fall of 1900, and, after being sick at Crockett for six weeks or two months, he was taken to the home of his brother W. D. Henderson in Walker County, at which place he died. After he was removed to Walker County, his brother, W. D. Henderson, came to Crockett and took charge of the jewelry business. The defendant Stokes demanded a settlement of the indebtedness due him by H. L. Henderson, and in settlement of same he agreed to take the furniture and fixtures in the jewelry store, and a sufficient amount of the jewelry, at a price agreed upon between himself and W. D. Henderson, to satisfy said indebtedness. All of these fixtures and furniture and a portion of the jewelry had been sold to H. L. Henderson by the defendant, and the notes due him were for the purchase money of same, and recited that a lien was retained upon said property to secure their payment. All of the furniture and fixtures, and a portion of the jewelry, was turned over by W. D. Henderson to the defendant, in accordance with the agreement above mentioned. The indebtedness due defendant by H. L. Henderson amounted to $1474. The notes held by the defendant were deposited with the bank at Crockett, with instructions to turn same over to W. D. Henderson, when he should deliver to the bank a bill of sale signed by H. L. Henderson, conveying the property to the defendant. This settlement was made with W. D. Henderson in January, 1901. W. D. Henderson carried a bill of sale to the property, prepared by the defendant, to his brother in Walker County for the purpose of having him execute it. He testified, however, that his brother was too sick to attend to the matter,

and he signed H. L. Henderson's name to the instrument, without saying anything to him about it, and took it back to Crockett, delivered it to the bank, and got the notes. Some time after this W. D. Henderson told H. L. Henderson of the settlement with Stokes, and the latter said he was glad of it. W. D. Henderson testified that he had no authority from H. L. Henderson to take charge of his business, or to make the settlement with the defendant; that he was satisfied his brother's mental and physical condition was such that he was incapable of attending to business, and he does not think he remembered what indebtedness there was against him, and did not understand or appreciate what he was saying when he stated that he was glad the settlement with the defendant had been made.

There is no issue raised by the evidence as to the amount of the indebtedness due the defendant, nor as to the reasonableness of the price paid by defendant for the property. H. L. Henderson died with consumption. W. A. Norris, at whose house he was boarding when he was taken sick, testified that he declined very rapidly while he remained at his house; that he was just barely alive and scarcely knew anyone; that only a few friends were allowed to see him; and that after the first week of his sickness he would only recognize his two brothers, the witness and two other friends. W. D. Henderson further testified that, at the time he told H. L. Henderson of the settlement with the defendant, said Henderson's condition was such that, if you should introduce any subject, and talk to him about it for a while, that he would either fall asleep or become totally exhausted, so that he did not have the capacity to listen to you, or to apply his mind to the subject about which you were talking to him. This is all the testimony in the record upon the issue of the mental condition of H. L. Henderson at the time he ratified the settlement made with the defendant by W. D. Henderson. The court below found as a fact that this evidence failed to establish that H. L. Henderson was at the time of the sale of the goods to defendant of unsound mind, and so deficient mentally that he could neither make a sale or ratify the act of his brother, who purported to act as his agent in making such sale.

The law presumes all persons to be of sound mind and capable of understanding contracts entered into by them, and when a contract is assailed on the ground of the mental incapacity of one of the parties, the burden is upon the person denying the validity of the contract to show such incapacity. It is a well settled rule of evidence that a nonexpert witness is only permitted to give his opinion as to the sanity or insanity of a person, whose mental condition at a particular time is the issue before the court or jury, when such witness states the facts upon which his opinion is based. This rule presupposes that the court or jury is as competent to pass upon the facts, from which sanity or insanity is to be inferred, as such witness. The opinion of the witness is to be given weight only when, in the judgment of the court or jury, it is a reasonable and probable conclusion from the facts stated; and its weight is always a ques-

tion for the jury, to be determined upon a consideration of all the evidence in the case. It follows that unless the evidence in the particular case is such that the only reasonable conclusion that can be drawn therefrom is that the person, whose mental condition is the issue to be determined, was of unsound mind, or that any other conclusion would be so against the great weight and preponderance of the evidence as to indicate that it was the result of undue influence or improper motive, the judgment of the court or jury, finding that such person is of sound mind, should not be set aside on the ground that it is not supported by the evidence or is against the weight and preponderance of the evidence.

The evidence in this case shows that H. L. Henderson died of consumption, with which disease he had been suffering several months before his death. It is a matter of common knowledge that consumption is not a disease of the mind, and that ordinarily such disease does not affect the mind of the sufferer, except by sympathy with the weakness of the body. The facts in this case show that only in this way and to this extent was H. L. Henderson's mind affected at any time. While he remained at Crockett, after he was taken sick, the evidence shows that he was extremely low, and was so sick that his physician would allow very few persons to see him, and after the first week of his sickness he would only recognize a few of his most intimate friends. But this was several months before he ratified the settlement made with the defendant by his brother, W. D. Henderson. We have no evidence as to his condition after he was taken from Crockett, except the statements of W. D. Henderson that he was satisfied that his brother's mental condition was such that he is incapable of transacting business, and that "if you would introduce any subject, and talk to him about it for a while, he would either fall asleep, or that he would become totally exhausted, so that he did not have capacity to listen to you, or apply his mind to the subject about which you were talking to him." This witness does not say that H. L. Henderson fell asleep while witness was telling him of the settlement with appellee or became so exhausted that he did not listen to what witness was saying. On the contrary his reply to witness indicates that he fully understood what was said to him. There is no question as to amount of defendant's debt, and that same was due prior to the time the settlement was made, nor as to the settlement being a fair one. H. L. Henderson, knowing that he owed this debt and that the same was due, upon being told by his brother that he made a settlement of the same, and the terms of said settlement of the same, and the terms of said settlement being confessedly fair and just, would naturally have said to his brother that he was glad such settlement had been made. We think, as before stated, his reply indicates that he fully understood what had been done and approved of it. At most there is no evidence in the record, except the opinion of W. D. Henderson, that he did not understand what he was saying. In addition to this, as before indicated, the evidence shows that H. L. Henderson lived for a month or more after he

had ratified the sale, and it is therefore plain that he was not in as extremely low condition physically as he seemed to be while at Crockett.

Under this evidence we can not hold that the finding if the trial court that H. L. Henderson was not of unsound mind at the time he ratified the settlement made by W. D. Henderson with the defendant is unsupported by the evidence, or is so against the great weight and preponderance of the evidence as to require a reversal of the judgment, and the assignment presenting this issue can not be sustained. It is immaterial that the trial court gave an unsound reason for his judgment, if such judgment can be sustained upon the facts found by the court.

The remaining assignments present no issue which it is necessary for us to consider. Upon the facts found by the trial court no other judgment than one in favor of the defendant could have been rendered, and said judgment is affirmed.

*Affirmed.*